# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| BRENDA F. ROBERTSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:12-cv-1419-DGK-SSA |
| CAROLYN W. COLVIN,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Brenda Robertson ("Robertson" or "Plaintiff") seeks judicial review of the Commissioner of Social Security's (the "Commissioner's") denial of her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et. seq*. The Administrative Law Judge ("ALJ") found Robertson had multiple severe impairments, including Hepatitis C, residual effects of MRSA infection, degenerative disc disease of the lumbar spine, depression, panic disorder, generalized anxiety disorder, and a history of substance abuse, but she retained the residual functional capacity ("RFC") to perform work as a mail clerk, price marker, and electrical assembler.

After carefully reviewing the record, the Court AFFIRMS the Commissioner's denial of benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

## Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits and SSI benefits in October 2007, alleging a disability onset date of May 1, 2004. The Commissioner denied her applications at the initial claim level, and on January 8, 2010, ALJ Deborah Van Vleck held that Plaintiff was not disabled as defined in the Act. On October 25, 2010, the Appeal's Council denied Plaintiff's request for review. Subsequently, Plaintiff appealed to this Court alleging a variety of errors in the ALJ's opinion. On January 3, 2012, this Court remanded the case to the ALJ because she relied upon the opinion of a single decision maker in formulating Plaintiff's RFC. The Court also advised the ALJ to explicitly consider and discuss the third party statement of Plaintiff's fiancé, James Firebaugh.

On remand, the case was assigned to another ALJ, Michael Lehr, who conducted another hearing. On August 16, 2012, he issued an opinion finding that Plaintiff was not disabled as defined in the act. On December 7, 2012, after the ALJ's decision became final, Plaintiff appealed the decision to this Court. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well

as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends the ALJ erred in formulating Plaintiff's residual functional capacity ("RFC") by: (1) failing to properly assess Plaintiff's credibility; (2) failing to consider the third party statement of Plaintiff's mother, Christine Goetz ("Ms. Goetz"); (3) failing to give any weight to the opinion of Plaintiff's treating physician, Dr. William Irby, D.O. ("Dr. Irby"); (4) failing to include limitations on Plaintiff's ability to interact with peers and supervisors; and (5) failing to consider Plaintiff's low Global Assessment of Functioning ("GAF") scores. Plaintiff

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

3

also contends that the ALJ erred at step five because he failed to prove that Plaintiff could perform work as a mail clerk, price marker, and electrical assembler. The Court addresses each argument below.

**A. The ALJ properly considered Plaintiff's credibility.**

Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility because objective medical evidence actually supports Plaintiff's subjective complaints and the ALJ improperly considered Plaintiff's noncompliance with prescribed treatment.

The ALJ's evaluation of a claimant's credibility is crucial to the RFC determination because it influences the inclusion or exclusion of alleged impairments. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). Thus, the credibility inquiry is often the threshold step in the ALJ's RFC determination. *Id.* Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ articulates the inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

The ALJ articulated a variety of well-supported reasons for discrediting Plaintiff's subjective complaints. First, the ALJ identified that Plaintiff's complaints of disabling back pain and other ailments, which allegedly rendered her effectively immobile, were unsupported by the objective medical evidence. R. at 917. Such a finding is supported by substantial evidence.

An ALJ may consider the lack of objective medical evidence supporting a plaintiff's subjective complaints as one factor in assessing credibility. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004). While some medical evidence in the record supports Plaintiff's complaints of back pain, the medical evidence on a whole belies Plaintiff's allegations to the extent she claims disabling limitations. Dr. John Sand, M.D., who performed a consultative exam on Plaintiff in 2011, reported that Plaintiff could bend ninety degrees while sitting, she had a normal gait, and she exhibited no spinal tenderness. R. at 1794. Similarly, after reviewing Plaintiff's medical records, Dr. Joan Singer, Ph.D., remarked that Plaintiff significantly exaggerated her limitations to the extent she claimed debilitating mental and physical limitations. R. at 1675-76.

Several diagnostic tests also demonstrate the inconsistency between Plaintiff's subjective complaints and the actual objective medical evidence. CT scans of Plaintiff's back taken in March 2008, August 2008, and April 2009 revealed that she only exhibited mild structural abnormalities, including mild disc space narrowing, and slight disc bulging at two locations, and degenerative facet disease at three locations. R. at 612, 701, 1563. On August 10, 2010, and May 18, 2012, Plaintiff underwent x-rays on her back, which corroborated the existence of only mild abnormalities. R. at 1584, 1826. Also, as noted in the ALJ's opinion, there is no record evidence that Plaintiff's other severe physical impairments—Hepatitis C and the residual effects of MRSA—resulted in any significant functional limitations. Finally, despite Plaintiff's claims of disabling mental impairments, the majority of the objective record evidence suggests that Plaintiff exaggerated the functional impact of her mental impairments. R. at 230-31, 319-25, 712, 916-18, 1165-1680. Thus, the record evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints due to inconsistency with the medical evidence.

The ALJ also properly considered Plaintiff's noncompliance with prescribed treatment. Although not dispositive on the issue of disability, the ALJ may consider the plaintiff's history of

noncompliance with prescribed medical treatment as one factor in the credibility analysis. *See Guillams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). On numerous occasions, doctors remarked that Plaintiff failed to comply with treatment recommendations, including follow-ups with primary physicians and specialists. R. at 705, 1582. Thus, the ALJ was warranted in discounting Plaintiff's credibility for her noncompliance.

Finally, the ALJ discredited Plaintiff's credibility due to her consistent drug-seeking behavior. In evaluating a plaintiff's credibility, the ALJ may consider whether a pattern of drug-seeking behavior discredits complaints of disabling pain. *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995). Here, the ALJ found that Plaintiff's complaints of disabling back pain were undermined by a pattern of Plaintiff allegedly falling, visiting the emergency room complaining of severe back pain, and obtaining pain medication despite the fact that the objective medical tests repeatedly showed only minor abnormalities and no acute injuries. R. 918. The record evidence supports this finding. Several doctors and other hospital personnel repeatedly remarked that Plaintiff exhibited drug-seeking behavior during emergency visits for back pain. R. at 608, 811, 918, 1788-90. Also, as discussed more thoroughly above, the diagnostic tests consistently demonstrated only minor structural abnormalities. Therefore, the ALJ was warranted in discrediting Plaintiff's subjective complaints due to this alleged drug-seeking behavior.

### B. The ALJ's failure to discuss the third party statement of Ms. Goetz is harmless error.

Plaintiff contends that the ALJ failed to discuss or even acknowledge a third party statement from Plaintiff's mother, Ms. Goetz. Relying on this Court's earlier ruling that directed the ALJ to discuss the third party statement from Plaintiff's fiancé, James Firebaugh, Plaintiff argues that the Court should once again remand the case for the ALJ to reconsider the Commissioner's denial of benefits in light of Ms. Goetz's statement.

To assist the ALJ in evaluating the claimant's credibility and formulating her RFC, an ALJ is obligated to consider third party statements regarding a claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 404.1529(a), 404.1545(a)(3); SSR 85-16; SSR 96-7p; SSR 96-8p. An ALJ's failure to acknowledge a third party statement in her opinion is, at a minimum, a procedural error. *See Buckner v. Astrue*, 646 F.3d 549, 559-60 (8th Cir. 2011). Whether this error is prejudicial or merely represents a deficiency in opinion-writing technique depends on a variety of considerations, including: whether other, distinct errors also support remand; whether the ALJ properly assessed the claimant's credibility; and whether the record evidence also discredits the unacknowledged third party statement. *Buckner*, 646 F.3d at 559-60.[3]

Although the ALJ clearly erred in completely failing to mention Ms. Goetz's statement, the error was harmless. As discussed above, the ALJ conducted a well-reasoned credibility analysis, which effectively undermined the majority of Plaintiff's subjective complaints to the extent they alleged disabling limitations. This same record evidence also undermines the majority of observations in Ms. Goetz's statement. R. at 917-18. Additionally, Ms. Goetz's observations are almost identical, or, at the very least, largely duplicative of the observations in Mr. Firebaugh's opinion, which the ALJ explicitly rejected in his opinion as being unsupported by the medical evidence. *Id.*; *compare* R. at 1192-95 (noting the effects of various physical and

---

[3] Relying on *Willcockson v. Astrue*, 540 F.3d 878 (8th Cir. 2008) and several district court cases, *see e.g.*, *Arn v. Astrue*, 4:10-CV-01239-NKL, 2011 WL 3876418 (W.D. Mo. Sept. 1, 2011) (failure to discuss third party statement required remand), Plaintiff contends that the ALJ's failure to discuss Ms. Goetz's statement requires remand as a matter of law. The Court disagrees. In rejecting a similar argument in *Buckner*, the Eighth Circuit distinguished *Willcockson* as a case involving multiple other procedural errors and a clearly underdeveloped credibility evaluation. *Buckner*, 646 F.3d at 559-60. Similarly, in the district court cases Plaintiff relies upon, including this Court's prior decision, the ALJs committed other errors requiring remand. *See Pryor v. Astrue*, 4:11-CV-01254-NKL, 2012 WL 3016722, at *5 (W.D. Mo. July 23, 2012) ("The Court finds that [the ALJ's failure to discuss a third party statement], *combined* with other deficiencies identified in this Order, necessitates remand.") (emphasis added); *Robertson v. Astrue*, No. 10-1247-CV-W-DGK-SSA, 2012 WL 11120, at *2 (W.D. Mo. Jan. 3, 2012) (holding, prior to addressing the ALJ's failure to discuss Plaintiff's fiancé's statement, that the ALJ's adoption of a single decision maker's opinion constituted reversible error). Here, the ALJ provided a well-reasoned and well-supported credibility analysis and no other errors necessitate remand. Thus, this case clearly falls within the purview of *Buckner* rather than *Willcockson*.

7

mental impairments) *with* R. at 1196-99 (same). Consequently, the ALJ's failure to discuss Ms. Goetz's statement does not require remand.

### C. The ALJ did not erroneously weigh the opinion evidence.

Plaintiff argues that the ALJ erred in giving no weight to the opinion of her treating physician, Dr. Irby. In response, the Commissioner contends that the ALJ provided a well-reasoned and well-supported basis for giving Dr. Irby's opinion no weight, and, thus, this Court should not disturb the ALJ's decision.

An ALJ should usually assign controlling weight to a treating physician's opinion if that opinion is well-supported by, and consistent with, other evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). A treating physician's opinion, however, "is entitled to controlling weight only to the extent it is consistent with medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is not afforded controlling weight when the opinion is "internally inconsistent," *Myers*, 721 F.3d at 525, or if a conflict exists between the treating physician's opinion and other substantial evidence of the record. *See Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010). Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). Once the ALJ has articulated the weight afforded to a physician's opinion, the court only inquires to whether substantial evidence supports the ALJ's analysis, not whether the evidence could have supported a different conclusion in the first instance. *See Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005).

The ALJ provided several well-supported reasons for discounting Dr. Irby's opinion. As the ALJ articulated, there exists an arguable conflict between portions of Dr. Irby's treatment

8

notes and his functional capacity form. Specifically, Dr. Irby's treatment notes document normal reflexes, normal sensory functions, normal motor functions, negative results on straight leg raise tests, normal musculoskeletal exams, and no soft tissue swelling at times. R. at 1382-1416, 1684-85, 1806-07. But despite these notes, Dr. Irby's functional capacity form suggests Plaintiff was essentially bedbound. R. at 1832-35. These arguable inconsistencies justify the ALJ's decision to reject Dr. Irby's opinion. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070-71 (8th Cir. 2004).

The ALJ also did not err in discounting Dr. Irby's residual capacity form because it was conclusory and primarily based upon Plaintiff's subjective complaints, rather than objective clinical findings. Dr. Irby's opinion consisted of a check-mark form with no explanations or reference to any clinical findings that supported the limitations articulated on the form. R. at 1832-35. Such forms are of limited value in evaluating a claimant's disability. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Moreover, the only clinical findings in Dr. Irby's treatment notes supporting any physical functional limitations regard the back pain Plaintiff exhibited upon palpation or range of motion tests. R. at 1387-1411. However, the ALJ did not err in rejecting these treatment notes because the findings were primarily based upon subjective complaints, not objective clinical findings or tests. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). In fact, Dr. Irby's treatment notes are devoid of any reference to x-rays, CT scans, MRIs, or any other objective tests, which would support the significant limitations articulated in Plaintiff's functional capacity form. In absence of diagnostic data, Dr. Irby's opinion was primarily based upon Plaintiff's subjective complaints, and such reliance was dubious given Plaintiff's pattern of symptom exaggeration and drug-seeking behavior. R. at 1675-76.

The ALJ also properly considered the inconsistency between Dr. Irby's opinion and other record evidence. Dr. Sand's opinion, which the ALJ gave greatest weight, articulated far less

functional restrictions than Dr. Irby's opinion. R. at 1793-1801. Additionally, as discussed above, the x-rays and CT scans in the record only revealed minor structural abnormalities. Because substantial evidence supports the reasons articulated for discounting Dr. Irby's opinion, the ALJ did not err in giving his opinion no weight.

**D. The ALJ did not err by failing to include a limitation regarding Plaintiff's interaction with peers or supervisors.**

Next, Plaintiff alleges that the ALJ erred in formulating Plaintiff's RFC. Dr. Singer checked boxes on the mental residual functional capacity assessment form ("MRFC") indicating Plaintiff was moderately limited in her ability to interact with the general public, co-workers, and supervisors. R. at 1679. In Plaintiff's RFC, the ALJ excluded Plaintiff from any work involving contact with the general public, but he did not place any limitations on Plaintiff's ability to interact with the supervisors or co-workers. R. at 914-15. Because the ALJ precluded Plaintiff from working with the general public presumably based on the check-marked box in the MRFC, Plaintiff reasons that the ALJ should have also explicitly included a limitation in the RFC addressing Plaintiff's inability to interact with co-workers and supervisors. The Court disagrees.

While Dr. Singer marked the moderately limited boxes regarding Plaintiff's interaction with co-workers and supervisors, Dr. Singer also clarified the extent of these limitations in the narrative section of the MRFC. As regards Plaintiff's social interaction limitations, Dr. Singer remarked that "[P]laintiff can interact *adequately* with peers and supervisors in setting with low demand for social interaction." R. at 1680. However, Dr. Singer provided no indication that Plaintiff could work adequately in positions involving interaction with the public. *Id.* When the check-marked boxes are considered in light of this narrative, one plausible conclusion is that Dr. Singer precluded Plaintiff from positions involving interaction with the general public, but not positions involving interaction with co-workers and peers. *See Moore v. Astrue*, 623 F.3d 599,

10

602 (8th Cir. 2010) ("[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, we must affirm the ALJ's decision."). The opinion of Dr. Keith Allen, Ph.D., which identified no significant limitations on Plaintiff's ability to interact with peers and supervisors, also supports this conclusion. R. at 300-16. Because substantial evidence supports the ALJ's decision to not include any limitations regarding Plaintiff's interaction with co-workers and supervisors, the ALJ did not err.

As a corollary to the preceding argument, Plaintiff contends that the ALJ erred in not providing a narrative discussion of why he did not include a limitation regarding co-workers and supervisors. This argument lacks merit. Although the ALJ must provide a general discussion identifying the evidence supporting the limitations included in the RFC, the ALJ is not required to list specific evidence related to *each* alleged limitation included or excluded from the RFC. *See McCoy*, 648 F.3d at 615. In the ALJ's four-page RFC discussion, he provided a sufficient explanation of the medical and non-medical evidence supporting his decision. R. at 914-919. Thus, the ALJ did not err.[4]

### E. The ALJ did not err by failing to discuss Plaintiff's Global Assessment Functioning scores.

Plaintiff argues that the ALJ's failure to discuss Plaintiff's GAF scores requires remand. Relying on *Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009) for the proposition that a GAF score of 50 or less is incompatible with the ability to work, Plaintiff contends that the ALJ's

---

[4] Even assuming that the ALJ erred in not limiting Plaintiff to jobs with "low demand for social interaction" and not explaining why he failed to include limitations on interactions with co-workers or peers, the error represents merely a deficiency in opinion writing. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008). All the positions ultimately selected by the ALJ—mail clerk, price marker, and electrical assembler—do not require significant social interaction. *See Dictionary of Occupational Titles* (DOT), "Mail Clerk," 1991 WL 671813 (4th ed. 1991) (noting that position requires an insignificant amount of interaction with others); *Dictionary of Occupational Titles* (DOT), "Marker," 1991 WL 671802 (4th ed. 1991) (same); *Dictionary of Occupational Titles* (DOT), "Subassembler," 1991 WL 679729 (4th ed. 1991) (same). Thus, even assuming the ALJ had adopted these alleged limitations, Plaintiff would have still qualified for these positions.

11

failure to discuss several of Plaintiff's GAF scores in the 45-50 range constitutes reversible error. R. at 231, 325, 827, 1378. The Court disagrees.

Although it is preferable for the ALJ to at least consider a claimant's GAF scores since they assist the ALJ in "assessing the level of a claimant's functioning," *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010), an ALJ's failure to discuss the scores does not require remand when other record evidence undermines the scores' probative value. *Wright v. Astrue*, 489 Fed. Appx. 147, 149 (8th Cir. 2012). Here, portions of the record evidence discussed in the ALJ's opinion undermine the GAF scores to the extent they suggest Plaintiff is unable to work. The ALJ cited a number of medical reports in which Plaintiff exhibited only minor symptomology, seemed alert and oriented, possessed an intact attention span, and demonstrated the ability to concentrate. R. 230-231, 319, 708-22, 1619. Similarly, during his consultative examination of Plaintiff, Dr. Sand observed that "[Plaintiff's] mental status was intact with speech and language normal…[s]he was awake, alert and oriented." R. at 1794. More importantly, after a review of Plaintiff's medical records, including those involving the GAF scores, both Dr. Allen and Dr. Singer opined that Plaintiff still retained the mental capacity to perform work. R. at 305-16, 1665-80. Given this significant evidence, the ALJ did not err in failing to discuss Plaintiff's GAF scores.

**F. The ALJ sustained his burden at step five of the sequential process.**

In Plaintiff's final assignment of error, she argues that the ALJ failed to sustain his burden of proving that Plaintiff could work as a mail clerk, price marker, or electrical assembler. Plaintiff contends that the check-marked portion of Dr. Singer's opinion suggests that Plaintiff is markedly limited in the ability to carry out detailed instructions, R. at 1678, but the RFC and hypothetical only limited Plaintiff to simple, unskilled work. R. 912. Plaintiff concludes that if the ALJ had explicitly included the no detailed instructions limitation in the RFC and

hypothetical to the vocational expert ("VE"), the VE would not have identified the positions of mail clerk, price marker, and electrical assembler because all three require the employee to be able to carry out detailed but uninvolved instructions. The Court finds no error here.

An ALJ may rely on the testimony of a vocational expert to satisfy his step five burden. *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). Although the hypothetical must include all impairments "substantially supported by the record as a whole," *id.*, it need not distill every limitation in precise diagnostic terminology. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Rather, the hypothetical must only "capture the concrete consequences of a claimant's deficiencies." *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007).

The ALJ's hypothetical adequately captured the concrete consequences of claimant's mental impairments. In the hypothetical and RFC, the ALJ limited Plaintiff to simple, unskilled work. R. at 989. According to the Program Operations Manual System ("POMS"),[5] the mental demands of simple, unskilled work includes, among others, the ability to "understand, carry out, and remember simple instructions." DI 25020.010, *available at https://secure.ssa.gov*. Even though Dr. Singer suggested in one portion of her opinion that Plaintiff was markedly limited in her ability to carry out detailed instructions, R. at 1678, the narrative portion of her opinion clearly states Plaintiff could understand and carry out simple instructions. R. 1680. Moreover, the other abilities articulated in Dr. Singer's narrative also coincide with the requirements of unskilled work. R. at 1680; POMS, DI 25020.010, *available at https://secure.ssa.*gov. Thus, the ALJ's use of the terminology simple, unskilled work accurately captured the concrete consequences of the mental impairments that were supported by substantial evidence.

---

[5] Although the POMS is not binding on ALJs, it is a persuasive authority for courts to use in analyzing an ALJ's findings. *See Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004).

Plaintiff also appears to argue that there is conflict between the limitations in the hypothetical and the Dictionary of Occupation Titles ("DOT") descriptions for the three positions. As discussed above, the ALJ limited Plaintiff to simple, unskilled work, but the VE testified that Plaintiff could perform three positions, which all require at least level two reasoning and the ability to carry out detailed but uninvolved instructions. This argument lacks merit. When faced with a similarly worded hypothetical and VE testimony, the Eighth Circuit, in *Moore v. Astrue*, explicitly addressed and rejected this argument. 623 F.3d at 604-605. Accordingly, the Court finds that there is no conflict between the hypothetical limitations and the DOT.[6]

## Conclusion

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

Date:     January 10, 2014                            /s/ Greg Kays
                                                      GREG KAYS, CHIEF JUDGE
                                                      UNITED STATES DISTRICT COURT

---

[6] In attempt to distinguish *Moore*, Plaintiff contends that the reasoning in *McPheeters v. Astrue*, No. 12-CV-00137-DGK, 2013 WL 523674 (W.D. Mo. Feb. 12, 2013) applies in this case. In *McPheeters*, this Court ordered remand when there existed an obvious conflict between the hypothetical limitations and the DOT job description. *See McPheeters*, 2013 WL 523674, at *3 (noting obvious conflict between ALJs finding that Plaintiff was unable to perform jobs that involved "detailed tasks or detailed instructions" and the DOT job descriptions which require the "ability to carry out detailed instructions"). Here, however, there is no obvious conflict. On the contrary, like the hypothetical in *Moore,* the ALJ's hypothetical limited Plaintiff to simple, unskilled work. Thus, *Moore,* rather than *McPheeters*, controls.